IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE ELIZABETH D.-B., Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 2:25-cv-01328-KMC |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, Defendant. | : | |

**MEMORANDUM OPINION**

KATAYOUN M. COPELAND
UNITED STATES MAGISTRATE JUDGE August 14, 2026

Plaintiff Michelle Elizabeth D.-B. ("Plaintiff") seeks review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). The administrative record ("R.") has been transmitted to the Court. ECF No. 9. For the reasons set forth below, this Court affirms the decision that Plaintiff was not disabled.

## I. PROCEDURAL HISTORY

Plaintiff filed the application for DIB that is the subject of this appeal on July 2, 2021. She alleged disability due to left-sided weakness, balance problems, shortness of breath, brain fog, and difficulty concentrating. (R. 251-57, 327.) She dated the onset of her disability to January 25, 2021, which coincided with the date on which she experienced a stroke.

The state agency denied her claim initially on September 21, 2022 as well as on reconsideration, following which she requested a hearing. (R. 127-49.) Administrative Law Judge ("ALJ") Kimani R. Eason presided over a hearing held telephonically on July 3, 2024, at which Plaintiff and a vocational expert ("VE") testified. A non-attorney representative appeared on

Plaintiff's behalf at the hearing. (R. 58-99.)

The ALJ denied her claim in an August 21, 2024 written decision. (R. 19-34.) Plaintiff sought review in the Appeals Council, but that request was denied, making the ALJ's decision the final determination of the Commissioner. (R. 1-7.) *See also* 20 C.F.R. § 404.981. Plaintiff then filed this action in federal court and submitted her Brief and Statement of Issues in Support of Request for Review. ECF No. 12. The Commissioner filed a Response to Request for Review of Plaintiff, ECF No. 13, and Plaintiff filed a Reply Brief. ECF No. 14.

## II. LEGAL STANDARDS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Upon a request for review under 42 U.S.C. § 405(g), the Court reviews the ALJ's factual findings for "substantial evidence" that the claimant was not disabled. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin*., 181 F.3d 429, 431 (3d Cir. 1999). *See also Poulos*, 474 F.3d at 91 ("We review the ALJ's application of the law de novo[.]").

## III. FACTUAL BACKGROUND

Plaintiff had been working as a credentialing coordinator for a hospitalist company for six years when dizziness, nausea, and elevated blood pressure prompted her to seek an evaluation in the

emergency room. (R. 26, 31.) She had not been taking prescribed medication for hypertension, and testing on January 25, 2021 indicated she had experienced a stroke. (R. 26.) She received treatment as an inpatient for approximately one week and was then transferred to a rehabilitation hospital for two weeks of intensive therapy. (R. 26.) By March 15, 2021, she was ambulating without a walker but still reported left arm and leg drag and lack of coordination with her arm. (R. 503-04.) She began outpatient occupational and physical therapy soon thereafter. (R. 504.) In addition to hypertension and the cerebrovascular accident due to stenosis of a cerebellar artery, her other medical conditions included chronic kidney disease. (R. 21, 26.)

Plaintiff presented as a new patient to Vanessa Tilney, M.D., a primary care physician, on April 1, 2021 for the purpose of establishing care and for an annual physical examination. (R. 26, 477.) Dr. Tilney noted Plaintiff's report that her vertigo had resolved but that she had residual left-sided weakness and dizziness. Plaintiff reported that she had had a TIA – transient ischemic attack – in 2019. Dr. Tilney observed that Plaintiff walked slowly to the exam table and that it was an effort to step up. She recommended that Plaintiff maintain a blood pressure log for the next three months, continue PT and OT, and establish care with a nephrologist. Dr. Tilney was aware that Plaintiff had been seen by her neurologist the previous month. (R. 477, 480-82.)

As of the date of her visit with Dr. Tilney, Plaintiff had not returned to work. Dr. Tilney noted Plaintiff's report that she had "difficulty focusing at work so has to take time off to avoid stress which aggravates [blood pressure] and TIA to stroke." (R. 480.) Plaintiff sought private disability insurance benefits under an employer-sponsored plan, and Dr. Tilney completed an Attending Physician's Statement form on Plaintiff's behalf for that plan on April 8, 2021. Dr. Tilney indicated that Plaintiff was unable to perform sustained work activity at that time, even on a part-time basis, because Plaintiff was a "fall risk, [and] still actively getting therapy after stroke." (R.

1567.) Dr. Tilney could not estimate if or when Plaintiff would recover sufficiently to perform the duties of her past occupation or any other occupation. (R. 1568.)

Dr. Tilney completed another such form for the private disability insurance on January 31, 2022, and a third and final one on August 11, 2022. (R. 1428-30, 1461-62.) According to Plaintiff, after that, Dr. Tilney "no longer wanted to complete the documentations," so she took the next form required by the insurance company to her cardiologist, Amit Patel, D.O. (R. 66.) Plaintiff's understanding is that, based on what Dr. Patel conveyed in the form, the insurance company concluded she could return to work, and it discontinued her benefits in late 2023. (R. 66.) To be sure, in the October 25, 2023 form that he directed to the disability insurance plan, Dr. Patel indicated that Plaintiff could sustain sedentary work on a full-time basis and could also stand and walk frequently in a workday. (R. 1474.)

At some point, Plaintiff tried to get her old job back, albeit on a part-time basis. Her medications at that time, however, made her "very loopy" and dizzy, requiring her to lay down after taking them. (R. 71-73.) She also had brain fog and difficulty concentrating. Her former employer did not re-hire her. She testified that she was still taking those medications at the time of her hearing on July 3, 2024. (*Id.*) She also reported at the hearing that she had recently been diagnosed with congestive heart failure. She testified that she could hear her chest rattling when she lay down due to the fluid building and that she no longer slept well because she feared that she would not wake up in the morning due to this condition. (R. 74.)

## IV. DECISION UNDER REVIEW

The issue before the ALJ was whether Plaintiff was disabled under section 216(i) and 223(d) of the Act from the alleged onset date of January 25, 2021 through August 21, 2024, the date of decision. The ALJ relied upon the five-step sequential evaluation process set forth in 20 C.F.R.

§ 404.1520(a). At Step One, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 25, 2021. (R. 20-21, Finding No. 2.) At Step Two, he found that Plaintiff had several medically-determinable impairments – including congestive heart disease, hypertension and hypertensive heart disease, chronic kidney disease, obesity, cerebrovascular accident, and ADHD – that significantly limited her ability to perform basic work activities, qualifying them as "severe" impairments. (R. 21, Finding No. 3.) At Step Three, he concluded that these severe impairments, whether considered individually or in combination, did not satisfy the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 – a finding that Plaintiff does not challenge. (R. 21-25, Finding No. 4.)

Having found that Plaintiff did not establish disability at Step Three, the ALJ then proceeded to assess Plaintiff's residual functional capacity ("RFC"), which reflects an individual's maximum ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 404.1520(e), 404.1545. He found:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant can stand and walk no more than four hours in an eight-hour workday and no more than one hour at one time. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can understand, remember and carryout** [sic] **detailed, but not complex instructions in a work environment that does not require a specific production rate, such as assembly line work or hourly quotas.**

(R. 25, Finding No. 5).) The ALJ then applied this finding at Step Four. He determined that Plaintiff could not perform past relevant work, as the requirements of her past position as a credentialing coordinator required a higher skill level than her RFC could accommodate. (R. 31, Finding No. 6.) The ALJ then proceeded to Step Five, at which he was to assess whether Plaintiff

was capable of performing any other jobs that exist in significant numbers in the national economy considering her age (as a "younger individual" as of her alleged disability onset date and an "individual closely approaching advanced age" as of the date of decision), her education, the skills acquired from her past work, and her RFC. The ALJ determined that Plaintiff's exertional and non-exertional limitations compromised her ability to perform the full range of light work but that those limitations did not substantially alter her ability to meet the requirements of semi-skilled, sedentary occupations. (R. 32.)

At the hearing, the VE testified that several jobs at the sedentary exertional level – such as data entry clerk, clerk typist, and office receptionist – require no skills other than those Plaintiff already possessed. (R. 32.) Citing to this testimony, the ALJ concluded that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R. 31-32 & Finding Nos. 10-11.)

## V. DISCUSSION

Plaintiff contends that the ALJ's decision is marred by legal error that leaves this Court unable to determine if it was supported by substantial evidence. (Pl. Br. at 13.) She contends that the ALJ erred when he evaluated three "Attending Physician Statements" concerning Plaintiff that her treating physician, Vanessa Tilney, M.D., prepared for the benefit of the company that managed the long-term disability plan. Plaintiff asserts the ALJ failed to explain his assessment of both the "supportability" of Dr. Tilney's opinions and the "consistency" of her opinions with the other evidence of record, as required by 20 C.F.R. § 404.1520c(b)(2), requiring remand for a new decision. (Pl. Br. at 6; Pl. Reply at 3.) The Commissioner responds that the existing ALJ decision provides sufficient explanation of how he considered the supportability of and consistency of Dr. Tilney's opinions with the record, as he discussed the opinions of other treating or reviewing

physicians, including Plaintiff's treating cardiologist, Dr. Patel, and a state agency reviewing physician. (Def. Br. at 9.)

### A. Applicable law

Plaintiff's contention on appeal is based upon 20 C.F.R. § 404.1520c ("the Regulation"), a provision that describes for claimants how the agency's adjudicators will "consider and articulate" two types of evidence found in a record.[1] It sets out the following substantive considerations and articulation requirements:

> (a) *How we consider [medical opinions].* When a medical source provides one or more [medical opinions], we will consider those [medical opinions] from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of [medical opinions] are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the [medical opinions] in your claim according to paragraph (b) of this section.
>
> (b) *How we articulate our consideration of [medical opinions].* We will articulate in our determination or decision how persuasive we find all of the [medical opinions] in your case record. Our articulation requirements are as follows:
>
> (1) *Source-level articulation.* Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the [medical opinions] in your case record. Instead, **when a medical source provides multiple [medical opinion(s)], we will articulate how we considered the [medical opinions] from**

[1] The Regulation addresses "medical opinions and administrative medical findings" in the same breath. Only the former are at issue in this case. We have adjusted the references in the block quotation to remove the unnecessary references to "prior administrative medical findings."

**that medical source together in a single analysis** using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. **We are not required to articulate how we considered each [medical opinion] from one medical source individually.**

(2) *Most important factors*. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's [medical opinions]. **Therefore, we will explain how we considered the supportability and consistency factors for a medical source's [medical opinions] in your determination or decision.** We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider [medical opinions] in your case record.

(3) *Equally persuasive [medical opinions]*. [Omitted.]

(c) *Factors*. We will consider the following factors when we consider the [medical opinion(s)] in your case:

(1) *Supportability*. The more relevant **the objective medical evidence and supporting explanations presented by a medical source are to support his or her [medical opinion(s)]**, the more persuasive the [medical opinions] will be.

(2) *Consistency*. The more consistent a [medical opinion(s)] is **with the evidence from other medical sources and nonmedical sources** in the claim, the more persuasive the [medical opinion(s)] will be.

(3) *Relationship with the claimant*. [Omitted.]

(4) *Specialization*. The [medical opinion] of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the [medical opinion] of a medical source who is not a specialist in the relevant area of specialty.

(5) *Other factors*. [Omitted.]

(d) *Evidence from nonmedical sources*. [Omitted.]

20 C.F.R. § 404.1520c (bold emphasis added). Thus, the Commissioner has committed ALJs to explain how they considered the persuasiveness of a medical opinion in light of the relevant objective medical evidence and supporting explanations *presented by that particular medical source,* as well as the degree to which the opinion is consistent with evidence *from other medical sources* (or even non-medical sources) in the record. *Id.,* § 404.1520c(b)(2), (c)(1), (c)(2). At the same time, the Regulation explicitly permits ALJs to analyze the *multiple medical opinions of a single medical source* in a single analysis. *Id.*, § 404.1520c(b)(1).

**B. The ALJ's articulation of the persuasiveness of Dr. Tilney's medical opinions**

Dr. Tilney offered three opinions concerning Plaintiff's functional capacity: on April 8, 2021, January 31, 2022, and August 11, 2022. The ALJ devoted a paragraph of his decision to each. (R. 29-30.) He also addressed two subsequent medical opinions found in the record: an opinion offered by the State Agency reviewing physician on September 21, 2022 and the October 25, 2023 opinion offered by another of Plaintiff's treating sources: her cardiologist, Dr. Patel. (R. 29-30.)

As he discussed the persuasiveness of the three opinions rendered by Dr. Tilney, the ALJ articulated the following regarding the degree to which Dr. Tilney presented relevant objective medical evidence and supporting explanations, *e.g.*, the *supportability* of her opinions when rendered:

- Dr. Tilney's opinion of April 8, 2021, was rendered only after a brief treating relationship with the claimant starting on April 1, 2021. (R. 29.)
- Dr. Tilney noted on physical examination on January 24, 2022, that Plaintiff's gait

was normal and her physical exam was unremarkable. (R. 29-30.)[2] *See also* R. 751 (Dr. Tilney's observation at that visit that Plaintiff "is better able to ambulate, strength improved and symmetric").

- Dr. Tilney's August 11, 2022 opinion stated both that Plaintiff was unable to perform even part-time work yet simultaneously opined that she could sit continuously, stand frequently, and walk occasionally in an eight-hour workday. (R. 30.)
- Dr. Tilney's treatment notes did not document significant problems with balance or coordination, and she had not prescribed an assistive device for Plaintiff, when she opined, on August 11, 2022, that Plaintiff could not sustain balance and coordination. (R. 30.)

With respect to the *consistency* of Dr. Tilney's opinions with the evidence from other medical and nonmedical sources in the record, the ALJ articulated the following:

- Dr. Tilney's medical opinion of April 8, 2021 "conflicts with objective medical evidence annotated in subsequent treatment notes from Dr. Tinley." (R. 29.) Dr. Tilney's opinion stated that Plaintiff had limitations in walking but a consultation note in Dr. Tinley's file – reflecting a telemedicine vascular neurology consultation Plaintiff had on April 28, 2021, with Dr. Rajan Ramji Gadhia – indicates Plaintiff was ambulating independently. *See* R. 775 (Exhibit 6F, page 44). *See* R. 29 (citing same).

[2] The ALJ cited to page 20 of Exhibit 6F (R. 751) but mistakenly described the examination as taking place "in January 2024" or "January 24, 2024." *See* R. 29.

At the same time that the ALJ articulated why he found limited persuasive value in Dr. Tilney's various opinions, he also articulated why he found another treating physician opinion to be persuasive. The opinion rendered by Dr. Patel had the benefit of coming from a treating physician who was also a specialist in a relevant field (cardiology) and whose opinion was based upon an examination closer in time to the October 23, 2023 hearing. The ALJ recounted Dr. Patel's opinion that, in an eight-hour workday, Plaintiff could sit for 66-100% of the day and more than two hours at a time; and that she could stand or walk between 33-66% of the day, including standing up to one hour at a time. (R. 30.) The ALJ found Dr. Patel's opinion "persuasive in part as his opinion is in his area of specialization as a cardiologist and generally consistent with the findings reported in his examinations[.]" (*Id.*)

In light of these portions of the ALJ's decision, this Court finds that the Commissioner's ALJ satisfied his obligations under 20 C.F.R. § 404.1520c(b) to explain how he considered the supportability and consistency factors for the medical opinions in Plaintiff's record. The final decision of the Commissioner is not, as Plaintiff contends, marred by legal error.

## VI. CONCLUSION

This Court finds no basis to reverse this case under sentence four of 42 U.S.C. § 405(g), as the final decision of the Commissioner is supported by substantial evidence. Moreover, the ALJ complied with his obligation to evaluate the medical opinion evidence and explain why he found particular medical opinions persuasive.

The request for review will be denied. An appropriate order will follow.

BY THE COURT:

/s/ Katayoun M. Copeland
KATAYOUN M. COPELAND
UNITED STATES MAGISTRATE JUDGE